UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:16-CV-00119-CHB-LLK

DUZUAN LESTER                                                        PLAINTIFF

v.

DETECTIVE KEITH ROBERTS, *et al*.                          DEFENDANTS

## REPORT AND RECOMMENDATION

Judge Claria Horn Boom referred this matter to Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and disposition of all non-dispositive matters, including discovery issues. (Docket # 31, 6). Defendants, Detective Keith Roberts ("Detective Roberts") and the Louisville Metropolitan Government ("Louisville Metro[1]") (collectively "Defendants"), filed their Motion for Summary Judgment. (Docket # 19). Plaintiff, Duzuan Lester ("Plaintiff") filed his response in opposition (Docket # 22) and Defendants filed their Reply. (Docket # 27). For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment be granted.

**Introduction**

This case arises out of a criminal investigation and, later, a criminal prosecution in Jefferson County, Kentucky. In 2012, Plaintiff and Eugene Baker ("Baker") were indicted on charges of complicity to murder in violation of Kentucky Revised Statutes ("KRS") 507.020, complicity to robbery in violation of KRS 515.020, and lesser charges. Plaintiff spent twenty months incarcerated at Louisville Metro Corrections and three months in home incarceration before he was acquitted by the jury of all charges.

---

[1] The parties agree that Louisville Metro is authorized to conduct governmental business on behalf of Louisville Metropolitan Police Department.

**Background**

On August 25, 2007, at 7:07 p.m, Yvonne Wolf ("Wolf") called 911 after discovering Dominic Hudson ("Hudson") lying face down on the ground, surrounded by a pool of blood, and unresponsive. (Docket # 22-1). Wolf had gone to Hudson's apartment to pick up some CDs, but when Hudson did not answer the door, she entered the apartment through a slightly ajar door and discovered his body. (*Id*.). Emergency Medical Services arrived thereafter and pronounced Hudson dead, from what was later determined to be a single gunshot wound to the back of the head. (Docket # 22-22). Detective Roberts, a detective with Louisville Metropolitan Police Department's ("LMPD") Homicide Unit, was assigned the case, and upon arrival, directed officers to conduct interviews, gather evidence from the apartment, and canvass the area around the apartment complex. (Docket # 22-2, Roberts Dep., pp. 23-25).

During the investigation, Detective Roberts interviewed Kristie Hart ("Hart") on September 7, 2007, who stated that on the night of the murder she was with Hudson at his house. (Docket # 19-3, pp. 2-3). Hart stated that she opened the door of Hudson's house and two young black men entered. (*Id*.). She stated that one man wore a red hat and black shirt while the other man wore a hat and plaid shorts. (*Id*. at p. 3). Hart stated that one man took off his hat and set it on the computer desk. (*Id*. at p. 8). She stated that Hudson was arguing with one of the men. Hart stated that Hudson owned an automatic 9mm. (*Id*. at p. 17).

On September 14, 2007, Detective Roberts interviewed Hart's cousin, Teresa Wise ("Wise"), who was also at Hudson's house on the night of the murder. (Docket # 19-4, p. 3). Wise also stated that two black men entered Hudson's house, and that one of the black men was wearing a red hat. (*Id*. at pp. 3, 6). Wise stated that the two men remained in the house with Hudson after she left with Hart. (*Id*. at p. 5).

On October 19, 2007, Detective Roberts interviewed Susan Copass-Cheng. (Docket # 19-5). Copass-Cheng stated that she lived with Eugene Baker and that they had a child together. Copass-Cheng stated that on August 28, 2007, Baker called her in a panic and said that he needed to see her and their child. (*Id.* at p. 3). Copass-Cheng stated that when she met with Baker, he seemed upset and nervous; Baker told her "I just needed to see you because I did something that if somebody finds out, I will probably never be able to see you all again." (*Id.*). She also stated that Baker had been living with Jasmine Hobson ("Jasmine"). (*Id.* at p. 8). Copass-Cheng stated that Jasmine told her that she had not seen Plaintiff "since all that stuff happened… He's scared to death." (*Id.* at p. 11). Copass-Cheng stated that Jasmine assured her that there was nothing to be scared of by telling her that "[h]e (Baker) finished it. You're safe." (*Id.* at p. 12). Copass-Cheng stated that she then spoke to Baker's sister, Ladajar Baker, who told her that she thought Baker and Plaintiff "hit a lick" on Hudson for a couple pounds of weed. (*Id.* at 13). Copass-Cheng described a "lick" as "something you do when you take somethin' (sic) from somebody that they're not supposed to have anyway. Meaning stolen property, illegal drugs, something of that nature." (*Id.* at p. 12). Copass-Cheng stated that she knew Plaintiff because he went to Valley High School with Baker. (*Id.* at p. 19). Copass-Cheng states that her friend Alicia told her that Baker was with Plaintiff "whenever he did whatever he was supposed to do. Ladajar (Baker's sister) told you it was a guy named Dominique (Hudson)." (*Id.* at p. 20). Copass-Cheng also stated that both Baker and Plaintiff were friends and that they both wore hats. (*Id.* at pp. 22, 24).

On November 2, 2012, Detective Roberts interviewed inmate Nikkia Sullivan ("Sullivan") at the Dayton Correctional Institute for Women. (Docket # 19-7, p. 1). Sullivan stated that she contacted Detective Roberts to give information about Hudson's murder a couple of years prior when she was incarcerated at a different facility. (*Id.* at p. 2). Sullivan stated that she had a previous

relationship with Hudson. (*Id*.). Sullivan stated that her friend Jasmine told her that she was driving the car and that her boyfriend, Baker, went into the apartment and killed Hudson. (*Id*. at p. 4). She stated that the other person in the car also went inside with Baker, but she did not know his name. (*Id*. at pp. 4, 10). Sullivan stated that Jasmine told her that Baker had gone to Hudson's apartment to talk about getting his clientele back and that Baker ended up shooting Hudson. (*Id*. at p. 5). Sullivan stated that she called Detective Roberts three times prior to meeting with him, and that, she was living at home, the first time she called CrimeStoppers. (*Id*. at pp. 20-21).

The Report of Forensic Laboratory Examination[2] showed that one of the items tested[3], a baseball cap found next to Hudson's body, is "consistent with a mixture" of Plaintiff, Baker, and an untested individual. (Docket # 19-6; 22-14). The Exam states that an estimated one person in 6.3 thousand could be a contributor to this mixture based on the relevant United States populations. (*Id*.). Hudson was excluded as a contributor in this mixture. (*Id*.).

On December 17, 2012, Detective Roberts interviewed Jasmine about the night of the murder. (Docket # 19-8). Jasmine stated that on the night of the murder, she rode with her six-month old daughter, Plaintiff, and Baker, and possibly another female (a name she does not remember) to Hudson's house in order for Baker to pick up the cellphone that he left. (*Id*. at pp. 4-5). Jasmine stated that they parked the car at the B.P. station and Plaintiff and Baker walked across the street to Hudson's house. (*Id*. at p. 6). Jasmine stated that Plaintiff and Baker came running back to the car and were wearing scarves on their faces and fitted caps. (*Id*.). She stated that when Plaintiff and Baker got into the car, "they were like go-go-go! Come let's go-go-go! And they had like weed and all this other shit." (*Id*.). She stated that weed had fallen out onto the

---

[2] The Report was completed on April 4, 2008. (Docket # 19-6; 22-14).
[3] In addition to the baseball cap, six other items were tested: a white box containing two cigarette butts, a white box containing three cigarette butts, two "Kool" cigarette butts, one "Newport" cigarette butt, a blood standard from Hudson, a buccal standard from Plaintiff, a control swab, and a buccal standard from Baker. (Docket # 19-6; 22-14).

street and that they had money. (*Id*. at 27, 28). Jasmine stated that Baker told her that while Baker and Plaintiff were in the house waiting on the guys to leave, both of their faces were covered and they had hats on so the people who went into the apartment would not see their faces. (*Id*. at p. 8). Baker told her that he killed Hudson by shooting him in the back of the head. (*Id*.). Baker told her that he knew Hudson was dead because Hudson had fallen to the floor and was shaking. (*Id*.). Baker told her that they grabbed whatever they could grab and then ran out. (*Id*.). Jasmine stated that after the murder occurred, either that night or the next morning, Baker's cousin went to the house that she was staying at with Baker and got rid of Baker's gun and Baker's clothes. (*Id*. at p. 14).

On December 20, 2012, Plaintiff and Baker were indicted for complicity to murder, complicity to first-degree robbery, and complicity to tampering with physical evidence. (Docket # 22-18). Plaintiff was charged with complicity to murder, complicity to first-degree robbery, and complicity to tampering with physical evidence. Baker was also indicted for possession of a handgun by a convicted felon. (*Id*.).

On April 13, 2013, Plaintiff was arrested and taken to homicide where Detective Roberts interviewed him. During the interview, Plaintiff denied knowing Hudson. (*Id*. at p. 2).

From January 27, 2015 through February 5, 2015, the case of *Commonwealth of Kentucky v. Eugene Baker and Dezuan Lester*, Case No. 12-CR-003691, was tried in Jefferson Circuit Court, Division Eleven. (Docket # 22-20). On February 5, 2015, during closing argument, the Commonwealth Attorney told the jury, "Do not convict him of murder (referring to Plaintiff). Do not convict this man of robbery. Do not. I did not indict this case, but it's my job to present evidence of what a grand jury indicts. Do not convict him of those charges. I am asking you to not convict. Please do not. Please do not." (Docket # 22-15, Closing Argument, 2/5/15 at 3:03:00-3:03:40).

The jury found Plaintiff to be "not guilty" on all charges, no directed verdict motions were granted. (*Id.*). The jury was hung as to Baker.

From February 2, 2016 through February 10, 2016, Baker was retried in Jefferson Circuit Court, Division Eleven. (Docket # 22-21). At the end of the second jury trial, Baker was found guilty of murder, robbery in the first degree, tampering with physical evidence, and possession of a handgun by a convicted felon. (*Id.*).

## Procedural Background

On February 2, 2016, Plaintiff filed his verified Complaint against Detective Roberts and Louisville Metro in Jefferson County Circuit Court alleging claims of (1) a state and federal claim of malicious prosecution, (2) violations of due process, (3) failure to intervene, (4) failure to provide a speedy trial, and (5) failure to train and act. (Docket # 1-2). On February 23, 2016, this case was removed to federal court. (Docket # 1-3). The Complaint alleges that Detective Roberts led an investigation that was reckless and flawed, which resulted in Plaintiff's wrongful incarceration. (Docket # 1-2). On December 15, 2017, Defendants filed this Motion for Summary Judgment, arguing that Detective Roberts had probable cause to arrest Plaintiff and incarcerate him for twenty months, supported by the grand jury's indictment of Plaintiff. (Docket # 19).

## Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of "clearly and convincingly" demonstrating the absence of any genuine issues of material fact. *Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 930 (6th Cir. 2005) (citation omitted). If this burden is met, the nonmoving party must present "significant probative evidence," showing that genuine,

material factual disputes remain to defeat summary judgment. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (6th Cir. 1991) (citations omitted). "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is proper if the nonmoving party cannot meet his burden of proof after sufficient opportunity for discovery. *Fimbres v. Garlock Equip. Co.*, No. 3:11-CV-226-CRS-JDM, 2014 WL 2612513, at *2 (W.D. Ky. June 10, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

When ruling on a motion for summary judgment, the court is required to construe the evidence in a light most favorable to the party that opposes the motion. *Id*. (citing *Bohn Alum. & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962)). The substantive law that governs the case will determine whether issues of fact, if any, are material, and any heightened burden of proof that is imposed by this substantive law must be satisfied if the responding party hopes to avoid summary judgment. *Barnett v. Louisville Metro Police Dep't*, No. 3:13-CV-32-S, 2013 U.S. Dist. LEXIS 183785, at *15 (W.D. Ky. Sep. 18, 2013) (citations omitted); *see Anderson*, 477 U.S. at 242.

## Discussion

Most of Plaintiff's claims are brought under 42 U.S.C. § 1983, which provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" with respect to actions taken by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983.[4] To prevail on a claim brought under § 1983, a plaintiff must prove that he was deprived of a right secured by the Constitution or laws of the

---

[4] Count II is for violations of procedural and substantive due process against Detective Roberts. Count III is for failure to intervene against Detective Roberts. Count IV is for violations of the Sixth Amendment against Detective Roberts.

United States and that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

## Count I, Malicious Prosecution

Plaintiff asserts both a federal claim for malicious prosecution and a state law claim for malicious prosecution. Defendant is entitled to summary judgment on this claim because Plaintiff fails to point to any firm evidence that shows that Detective Roberts knowingly or recklessly made material false statements or falsified or fabricated material evidence. *King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017).

The Sixth Circuit recognizes that a malicious prosecution claim under the Fourth Amendment provides a cause of action for damages caused by "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). To succeed on such a claim, a plaintiff must establish that (1) a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the prosecution decision"; (2) "there was no probable cause to support the charges"; (3) as a result of the legal proceedings, the plaintiff suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in the plaintiff's favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)). The Sixth Circuit does not require proof of malice. *Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 660 (W.D. Ky. 2013) (citing *Sykes*, 625 F.3d at 309). Plaintiff bears the burden of proof on a malicious prosecution claim. *Id*.

"The Kentucky Supreme Court recently clarified the essential elements of a claim for malicious prosecution under Kentucky law. In particular, the Kentucky Supreme Court held that '[a] malicious prosecution action may be established by showing that:'

1) [T]he defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

2) [T]he defendant acted without probable cause;

3) [T]he defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) [T]he proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and

5) [T]he plaintiff suffered damages as a result of the proceeding."

*Hadden v. Wathen*, No. 1:16-CV-00140-GNS-HBB, 2018 WL 4222882, at *18 (W.D. Ky. Sep. 5, 2018) (citing *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016)). The crucial difference between an action under § 1983 and one under Kentucky law is that the former does not require a showing of malice, while the latter does. *Carter v. Newby*, No. 5:17-CV-130-TBR, 2018 WL 3432126, at *3 (W.D. Ky. July 16, 2018). Nevertheless, malice may be inferred from a lack of probable cause. *Massey v. McKinley*, 690 S.W.2d 131, 133 (Ky. Ct. App. 1985).

Based on the facts of this case, Detective Roberts was involved in initiating the criminal proceedings against Plaintiff, Plaintiff was charged and indicted, and a jury ultimately acquitted Plaintiff of all charges. Thus, the linchpin to the federal malicious prosecution claim is whether probable cause existed. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). Both the defense of qualified immunity and the merits of Plaintiff's claim warrant the dismissal of this claim.

### *Qualified Immunity*

"Qualified immunity, if it applies, is a defense not just against liability, but against suit itself." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Qualified immunity ordinarily applies unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right. *Id.* (citing *Ashcroft v. al-Kidd*, 563

U.S. 731, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)). Qualified immunity "gives ample room for mistaken judgments" by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam) (citations omitted)). Further, qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Id*. (citing *Pearson*, 555 U.S. at 231).

Since Detective Roberts raised the qualified immunity defense, Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Greer v. City of Highland Park*, 884 F.3d 310, 314 (6th Cir. 2018); *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). Moreover, the allegations must demonstrate that each defendant officer, through his or her own individual actions, personally violated plaintiff's rights under clearly established law. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Iqbal*, 556 U.S. at 676; *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)).

There is a "two-tiered inquiry" for resolving claims of qualified immunity. *Hoskins v. Knox Cty.*, No. 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018) (citations omitted). First, the Court must determine whether "the facts alleged make out a violation of a constitutional right." *Id.* (citations omitted). If the plaintiff has shown a violation of a constitutional right, then the Court must proceed to the second step and "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated" the right. *Id.*

As discussed in the section below, Plaintiff has failed to show a lack of probable cause and a constitutional violation. Therefore, Detective Roberts is entitled to qualified immunity on Plaintiff's malicious prosecution claim.

### *Probable Cause*

As a general rule, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." [5] *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (quotation marks and citation omitted).  A long-held exception to this general rule occurs when the defendant knowingly or recklessly made material false statements (such as affidavits or investigative reports) or falsified or fabricated material evidence, which together with any concomitant omissions, led to the ultimate prosecution of Plaintiff.  *Jones v. Clark Cty.*, 690 F. App'x 334, 335-36 (6th Cir. 2017).  However, "even false testimony is not actionable as malicious prosecution unless deliberate—i.e., given with knowledge of, or reckless disregard for, its falsity." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). Therefore, a defendant's participation must be marked by "some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim under the Fourth Amendment." *Diamond v. City of Kalamazoo*, 2017 U.S. Dist. LEXIS 143032, at *20 (W.D. Mich. June 30, 2017) (citing *Johnson*, 790 F.3d at 655) (("even false testimony is not actionable as malicious prosecution unless deliberate - i.e., given with knowledge of, or reckless disregard for, its falsity")).

In support of his malicious prosecution claim, Plaintiff repeatedly points to what he perceives as deficiencies in Detective Roberts' investigation. Plaintiff asserts that Detective Roberts failed to speak to key witnesses, ignored two witnesses who implicated another person, failed to perform a basic background check on his "star witness" (Jasmine), and ignored evidence

---

[5] Where there was a grand jury indictment, fair upon its face, by a properly constituted grand jury, no claim of malicious prosecution can survive even if governmental officers made false statements. *Stanley v. City of Norton*, 124 F. App'x 305, 310 (6th Cir. 2005) (internal citations omitted). The Sixth Circuit has reversed district courts and held that the plaintiff's "indictment conclusively determines the existence of probable cause" rule controlled the outcome even when there was known animosity between the plaintiff and defendants, the investigation was seriously flawed, and the grand jury presentation did not include known exculpatory evidence. *Bakos v. City of Olmsted Falls*, 73 F. App'x 152, 153-54, 156-57 (6th Cir. 2003).

showing that his "star witness" was lying. Plaintiff further asserts that Detective Roberts ignored and minimized other evidence showing Plaintiff's innocence and/or the guilt of others.

First, Detective Roberts' grand jury testimony cannot be used as evidence to any federal claim.[6] In *Rehberg v. Paulk*, 566 U.S. 356, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012), the Supreme Court held "that grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Id*. at 369. Accordingly, to extent that Plaintiff bases his federal claims on Detective Roberts' grand jury testimony, Detective Roberts has absolute immunity for that testimony. *Sawyers v. Drummond*, No. 1:14-CV-00111-GNS-HBB, 2017 WL 217752, at *6 (W.D. Ky. Jan. 18, 2017); *see Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 3935883, at *3 (W.D. Ky. June 26, 2015) (citing *Rehberg* and holding that witnesses enjoyed absolute immunity from civil suits for allegedly false grand jury testimony).

"This does not mean, however, that a grand-jury indictment shields officers from all malicious prosecution claims." *Allen v. Rucker*, 304 F. Supp. 3d 638, 643-44 (E.D. Ky. 2018). In *Rehberg*, the Supreme Court noted that conduct "outside of the grand jury room"—such as falsifying affidavits—would not enjoy the same absolute immunity. 566 U.S. at 370, n.1. This could apply to officers who "set[] the wheels of government in motion by instigating a legal action." 566 U.S. at 371 (quoting *Wyatt v. Cole*, 504 U.S. 158, 164-65, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)). Also, in *Manuel v. Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017), the Supreme Court saw "no principled reason" to find that a grand-jury indictment expunges a Fourth Amendment claim. 137 S.Ct. at 920, n.8. "Nothing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment." *Id*.

---

[6] The Court notes that neither party cited to or relied on *Rehberg v. Paulk* in their briefs.

"Whatever its precise form, if the proceeding is tainted"—whether a preliminary hearing or grand jury indictment—"and the result is that probable cause is lacking," then plaintiff may pursue a Fourth Amendment claim. *Id.*

One exception to *Rehberg* is *King v. Harwood*, 852 F.3d at 587-88 (6th Cir. 2017). In *King*, the Sixth Circuit found that plaintiffs indicted by a grand jury may rebut probable cause in malicious prosecution cases where: (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury). *Allen v. Rucker*, 304 F. Supp. 3d 638, 644 (E.D. Ky. 2018) (citing *King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017)). Accordingly, Plaintiff cannot use grand-jury testimony to rebut probable cause but may use evidence from outside the grand-jury room to rebut probable cause.

Plaintiff argues that Detective Roberts' primary evidence hinged upon Jasmine's statements during her interview. Plaintiff contends that the numerous inaccuracies contained in Jasmine's interview should have alerted Detective Roberts that she was not a credible witness.[7]

---

[7] Plaintiff asserts that Detective Roberts had reason to know that Jasmine was lying. Plaintiff points to Jasmine's interview where she told Detective Roberts that when Baker and Plaintiff ran back to the car, weed was falling out of their pockets. (Docket # 22-17, Jasmine Interview, p. 17). However, Detective Roberts knew that there was never any weed located in the street, at the BP station, or around the apartment complex. (Docket # 22-2, Roberts Dep. 134:24-135:6). Plaintiff also asserts that Jasmine told Detective Roberts that Baker and Plaintiff were both wearing fitted hats when they returned to the car. (Docket # 22-17, Jasmine Interview, p. 27). Plaintiff argues that this statement should have raised serious concern about Jasmine's truthfulness because if both were wearing hats, then neither of them would have left a hat inside of Hudson's apartment. (See Docket # 22-2, Roberts Dep., 139:8-11). Additionally, Jasmine waffled between her answers in response to Detective Roberts' questions about the location, the car, and the driver of the vehicle. (Docket # 22-17, Jasmine Interview, pp. 2; 9; 4-5; 8-9).

13

Additionally, Plaintiff argues that Jasmine's statement contained numerous discrepancies with Sullivan's statement, which he had taken the month prior to Jasmine's interview.[8] Plaintiff asserts that despite these inaccuracies and discrepancies, Detective Roberts failed to corroborate any of the information that Jasmine had told him regarding Plaintiff. (Docket # 22-2, Roberts Dep., 123:24-124:125:25). Lastly, Plaintiff asserts that Detective Roberts failed to investigate Jasmine's background or credibility prior to trial. (Docket # 22-2, Roberts Dep., 139:22-24). [9]

Plaintiff further argues that the totality of the circumstances showed a lack of probable cause to prosecute Plaintiff. For example, Charles Evans Jr., an eyewitness, identified Charter as one of the black males running from the apartment complex around the time of Hudson's murder. (Docket # 22-3, Evans Interview). Wise also identified Charter as closely resembling one of the black males in Hudson's apartment right before the murder. (Docket # 22-8, Wise Interview, p. 9).

Plaintiff relies on *Jones v. Clark County*, 690 Fed. Appx. 334, 335-36 (6th Cir. 2017), in support of his proposition that there was no probable cause to indict him.  In *Jones v. Clark County*, the Sixth Circuit reversed and remanded the district court's ruling that granted the defendant officer's motion to dismiss because the plaintiff had failed to allege that the officer presented false testimony to the grand jury. *Id.* at 336.  In *Jones*, the defendant officer recommended child pornography charges against the plaintiff even though the police did not investigate whether any of the devices seized from the plaintiff's home contained child pornography. *Id.* at 335. One year

---

[8] Plaintiff asserts that Detective Roberts knew about the larger discrepancies between Sullivan's and Jasmine's interview and should have corroborated them or been alerted by them. For example, Jasmine stated that Plaintiff's dark-skinned female owned the car (Docket # 22-17, Jasmine Interview, pp. 4-5) while Sullivan stated that Jasmine owned the car (Docket # 22-16, Sullivan Interview, p. 5). Additionally, Jasmine stated that Plaintiff or a dark-skinned female drove the car (Docket # 22-17, Jasmine Interview, pp. 4-5, 8-9) while Sullivan stated that Jasmine drove the car (Docket # 22-16, Sullivan Interview, p. 4). Moreover, Jasmine stated that she was in the car with her six-month old child, Plaintiff, Baker, and a dark-skinned female (Docket # 22-17, Jasmine Interview, pp. 4-5). Contrarily, Sullivan stated that Baker, another black male, and Jasmine were in the car. (Docket # 22-16, Sullivan Interview, p. 4).

[9] Plaintiff raises additional arguments about when Jasmine told Detective Roberts that the incident had occurred and Jasmine's mispronunciation of Plaintiff's name.

14

after the plaintiff was indicted, the plaintiff's attorney had an expert examine the devices, and no evidence of child pornography was found. *Id*. Thereafter, the state court ordered the plaintiff's release after spending fourteen months in jail. *Id*. Later, on appeal from a malicious prosecution claim, the Sixth Circuit held that the plaintiff successfully alleged an absence of probable cause when he claimed that the defendant misled the prosecutor "through his deficient and reckless investigation and the critical omission of material evidence . . . ." *Id*. The Sixth Circuit explained that had the officer undertaken an analysis of the seized devices, which were in police possession the entire time, he would have discovered -- as the plaintiff had insisted under interrogation -- that they did not contain any pornography, most notably they did not contain the thirty-nine second video that triggered the investigation. *Id*. at 336.

In response, Defendants rely on *Newman v. Township of Hamburg*, 773 F.3d 769 (6th Cir. 2014). After being convicted of murder by a jury panel and spending fifteen years in prison, the court granted the plaintiff's writ of habeas corpus and the plaintiff filed suit for malicious prosecution. (*Id*. at 771). The district court rejected the officer's motion for summary judgment based on qualified immunity and the Sixth Circuit reversed and found that ample evidence of probable cause existed for the plaintiff's arrest and that no evidence revealed a deliberate or reckless misrepresentation by the defendant. (*Id*.). The Sixth Circuit first explained that the differences between the defendant officer's affidavit for a warrant and the interviewing officer's account of the witness' interview were only minor and did not permit an inference of deliberate or reckless disregard for the truth. *Id*. at 772 (citing *Hutsell v. Sayre*, 5 F.3d 996, 1004 (6th Cir. 1993)). Indeed, the differences between the officers' accounts dealt with the dates and time (one officer said it occurred at 5:00 p.m. on February 27 while the other officer did not give a time and thought it occurred on February 27 or 28). *Id*. The court reasoned that "[a]ny discrepancy at worst

shows negligence or perhaps a lack of attention to detail, which does not amount to malicious prosecution." *Id.* (citations omitted).

The *Newman* Court then explained that "the alleged inaccuracy does not change the probable cause calculus" because the rest of the evidence established probable cause for the plaintiff's arrest and prosecution, eliminating any claim that the defendant officer's recounting of the other officer's statement made a difference in his arrest and prosecution. *Id.* The court considered the other uncontested facts in the defendant officer's affidavit (i.e. the ballistics confirmed that one of the murder weapons was a handgun that plaintiff had purchased; the other murder weapon was a twelve-gauge shotgun, and police found a twelve-gauge shotgun in the same duffle bag as the plaintiff's handgun; the brown human hair in the bag was similar in color to the plaintiff's hair; and the reddish animal fur in the bag was similar to the color of the fur of one of the plaintiff's dogs) and found that all of the evidence readily supported probable cause. *Id.*

Unlike *Jones*, Plaintiff fails to point to any firm evidence, such as an affidavit, investigation report or summary, or even an investigation file, that shows that Detective Roberts omitted material evidence from the prosecutor. Plaintiff does not state what facts were concealed and fabricated, and does not point to any specific exculpatory evidence Detective Roberts suppressed. Essentially, Plaintiff's main argument is that, if Detective Roberts did a better job of conducting a criminal background on Jasmine, corroborating Jasmine's testimony, and following up with other witnesses, Plaintiff would not have been indicted.  The action or inaction of Detective Roberts only "shows negligence or perhaps a lack of attention to detail, which does not amount to malicious prosecution." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) (citing *Wolf v. Winlock*, 34 F. App'x 457, 461 (6th Cir. 2002); *Packer v. City of Toledo*, 1 F. App'x 430, 434 (6th Cir. 2001)). A negligent investigation does not amount to an intentional or reckless investigation.

Plaintiff's state-law claim for malicious prosecution fails for similar reasons. As stated above, Plaintiff must show that the defendant instigated an action against him with malice and without probable cause. *Massey v. McKinley*, 690 S.W.2d 131, 133 (Ky. Ct. App. 1985).

For these reasons, Plaintiff has failed to prove that there was a lack of probable cause. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted as to Count I.

## Count II, Due Process under the Fourteenth Amendment

Plaintiff's claim for violations of procedural and substantive due process under the Fourteenth Amendment (Count II) appears to be indistinguishable from the claim for malicious prosecution asserted pursuant to the Fourth Amendment.[10] "The right to be free from malicious prosecution 'must be asserted according to the Fourth Amendment.'" *Stigall v. Louisville Jefferson Cty. Metro Gov't*, No. 3:18-CV-168-CRS, 2018 U.S. Dist. LEXIS 170869, at *12 (W.D. Ky. Oct. 3, 2018) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1006 n.19 (6th Cir. 1999)). The Sixth Circuit has stated, "the substantive component of the Fourteenth Amendment's Due Process Clause, 'with its scarce and open-ended guideposts,' may not serve as the basis for a § 1983 malicious prosecution claim." *Id*. at *12-13 (citing *Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002) (citations omitted)). Accordingly, Plaintiff's Fourteenth Amendment claim fails as a matter of law and the Court recommends that Defendants' Motion for Summary Judgment be granted as to Count II.

## Counts III & IV, Failure to Intervene and Violations of the Sixth Amendment

Defendants assert that the allegations, contained in Counts III and IV of the Complaint, fall within the malicious prosecution stated in Section I. Defendants further assert that the allegation

---

[10] Plaintiff asserts that Detective Roberts deprived him of liberty without due process of law by fabricating evidence used to arrest, indict, and prosecute him. (Docket # 1-2, ¶ 58).

that Defendants violated Plaintiff's speedy trial rights has no basis because the only remedy for a violation of speedy trial rights is the dismissal of a criminal action. Defendants assert that Plaintiff never made a motion during the pendency the trial. Plaintiff does not refute these assertions in his response. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted as to Counts III and IV.

**Count VII[11], Failure to Train Claims Against Louisville Metro**

### *1. State Law Claims*

Plaintiff's Complaint asserts claims against Louisville Metro for unconstitutional policies/customs/practices, failure to train, and/or failure to act under 42 U.S.C. § 1983. Louisville Metro interprets Plaintiff's Complaint as asserting claims against it under both state and federal law. The Court will address the state law claims first, followed by the § 1983 claim.

Louisville Metro argues that all state law claims asserted against it are barred by sovereign immunity, by virtue of Kentucky Revised Statutes ("KRS") 67C.101(2)(e). KRS 67C.101(2)(e) accords a consolidated local government, such as Louisville Metro, the same sovereign immunity accorded to counties, their agencies, officers, and employees. *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky. Ct. App. 2013) (citing *Jewish Hosp. Healthcare Servs. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008)) ("[A]bsent an explicit statutory waiver, Metro Government is entitled to sovereign immunity."). Plaintiff does not refute this in his response.  Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted as to Plaintiff's state law claims against Louisville Metro.

### *2. Monell Claim- Count VII*

---

[11] Presumably, Plaintiff intended for this to be Count V.

Count VII of Plaintiff's Complaint seeks to hold Louisville Metro liable for the alleged deprivation of Plaintiff's constitutional rights pursuant to § 1983. A plaintiff raising a municipal liability claim under § 1983 "must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation … visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels.'" *Stigall v. Louisville Jefferson Cty. Metro Gov't*, No. 3:18-CV-168-CRS, 2018 WL 4775506, at *7 (W.D. Ky. Oct. 3, 2018) (citations omitted). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of Louisville Metro's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Id.* (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). To establish deliberate indifference, Plaintiff must show prior instances of unconstitutional conduct demonstrating that the Louisville Metro has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Lucier v. City of Ecorse*, 2014 WL 1260651, at *24-25 (E.D. Mich. Mar. 27, 2014) (citations omitted). Where failure to train and supervise claims are not couched as part of a pattern of unconstitutional practices, the Louisville Metro may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. *Id.* (citations omitted). Thus, Plaintiff can survive

summary judgment under this standard by showing that officer training failed to address testifying before the grand jury and that such a failure has the "highly predictable consequence" of constitutional violations of the sort Plaintiff suffered. *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citations omitted).

In support of his failure to train claim, Plaintiff relies on deposition testimony that LMPD officers generally do not receive any instruction on presenting evidence to a grand jury. Plaintiff relies on Detective Roberts' testimony where he stated that the Louisville Metro provides no formal training regarding grand jury testimony because he gets on the job training. (Docket # 22-2, Roberts Dep., 154:12-155:2). Plaintiff further emphasizes that Detective Roberts testified that he received no training on omitting material evidence in front of a grand jury. (*Id*. at 155:3-5).

Although Plaintiff has provided deposition testimony that may show that Louisville Metro's training was inadequate, Plaintiff's failure to train claim still fails because he has not pointed to any evidence that shows "deliberate indifference". Plaintiff fails to allege a pattern of similar incidents or even a pattern of conduct involving Louisville Metro testifying inadequately before a grand jury and resulting in the "malicious prosecution and unnecessarily prolonged detention of individuals." (Docket # 22, p. 25); *See Robinson v. Meeks*, 2018 WL 1399478, at *20 (N.D. Tex. Mar. 20, 2018).[12]

Plaintiff failed to allege a pattern of conduct showing inadequate training and has not established the necessary element of the Louisville Metro's deliberate indifference. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted as to Plaintiff's federal law claim (Count VII) against Louisville Metro.

---

[12] Plaintiff has not shown that the claimed constitutional violation at issue is the result of an official police or custom of the Louisville Metro as opposed to the actions of an individual detective. *Barnett v. Louisville Metro Police Dep't*, No. 3:13-CV-32-S, 2013 U.S. Dist. LEXIS 183785, at *23 (W.D. Ky. Sep. 18, 2013).

## Recommendation

For the reasons stated above, the Magistrate Judge RECOMMENDS that the Court GRANT Defendants' Motion for Summary Judgment (Docket # 19).

December 11, 2018

**Lanny King, Magistrate Judge**
**United States District Court**

## Notice

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived.  *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

December 11, 2018

**Lanny King, Magistrate Judge**
**United States District Court**