UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DUZUAN LESTER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:16-CV-119-CHB |
| | ) |
| v. | ) |
| | ) **ORDER ADOPTING IN PART** |
| DETECTIVE KEITH ROBERTS, et al., | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Magistrate Judge Lanny King's Report and Recommendation [R. 32], wherein he recommends that the Court grant the Defendants' Motion for Summary Judgment denying Plaintiff's claims for malicious prosecution and various constitutional violations stemming from his prosecution and later acquittal for the murder of Dominic Hudson. On December 31, 2018 Plaintiff filed his objections to the Report and Recommendation. [R. 35] The Motion is now ripe for the Court's review. This Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). For the following reasons, the Report and Recommendation will be partially accepted as the opinion of the Court.

   I.   **Absolute Immunity for Grand Jury Testimony**

Plaintiff first objects to Magistrate Judge King's finding that "Detective Robert's grand jury testimony cannot be used as evidence to any federal claim." [R. 32 at p. 12] Magistrate Judge King based his ruling on a 2012 Supreme Court decision which held that "grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury

witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 566 US. 356, 369 (2012).

Plaintiff argues that because absolute immunity is an affirmative defense, the Defendants' failure to raise it operates as a waiver of its protections. [R. 35 at p. 2] Given the firm protections for grand jury testimony granted by the Supreme Court in *Rehberg* the Court is hesitant to consider Detective Robert's grand jury testimony. However, the Court has neither been made aware of nor been able to find a great deal of case law on the specific issue of waiver of immunity for grand jury testimony in the context of § 1983 actions, and what limited authority there is does seem to indicate that "immunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded … failure to do so can work a waiver of the defense." *Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986); *Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 752 (S.D. Ohio 2017). Under Fed. R. Civ. P. 8(c) an affirmative defense may be waived if the Defendant does not raise it in a responsive pleading. Not only did Defendants not raise the affirmative defense of absolute immunity, but in their motion for summary judgment Defendants' cite to Detective Roberts' grand jury testimony in an attempt to show that no false testimony was offered. [R. 19-1 at pp. 8-9] The Court need not decide the waiver of absolute immunity, however, as even if it were considered it would not rebut the presumption of probable cause created by the grand jury indictment.

## II. Qualified Immunity and Probable Cause

Plaintiff next argues that Magistrate Judge King erred in finding that Defendant Roberts was entitled to qualified immunity. [R. 35 at p. 7] In his Report and Recommendation Magistrate Judge King correctly notes that the Defendants' reliance on qualified immunity turns on whether there was probable cause for Plaintiff's prosecution. [R. 32 at p. 10] Magistrate

Judge King ruled that probable cause existed because "Plaintiff fails to point to any firm evidence … that shows Detective Roberts omitted material evidence from the prosecutor. Plaintiff does not state what facts were concealed and fabricated, and does not point to any specific exculpatory evidence Detective Roberts suppressed." *Id*. at 16. Therefore, Magistrate Judge King states that because Plaintiff can only show that Defendant Roberts was at most negligent and not reckless in his investigation, Plaintiff cannot show a lack of probable cause and so qualified immunity applies and Plaintiff's claims for malicious prosecution must fail. *Id*. In his objection Plaintiff states that the numerous discrepancies in the witness testimony presented to Detective Roberts, which he then omitted in his recommendation that Plaintiff be prosecuted, so tainted his investigation that there could not have been probable cause to indict Plaintiff Lester.

Generally an "indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). In 2017 the Sixth Circuit created an exception to this rule for actions taken by law enforcement officials outside of grand-jury testimony that serve to make the grand jury's indictment a rebuttable and not conclusive presumption of probable cause. *King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017). In his Report and Recommendation Magistrate Judge King based his decision both on the Plaintiff's failure to overcome the conclusive presumption of a grand jury indictment under the test created by *King*, as well as on his finding that even if the presumption were found to be rebuttable and not conclusive that the Plaintiff nevertheless failed to show a lack of probable cause. The Court believes that the case may be decided on Plaintiff's failure to reach the threshold established in *King* necessary to make his grand jury indictment rebuttable and not conclusive proof of probable cause.

As noted in Magistrate Judge King's Report and Recommendation, in *King* the Sixth Circuit stated that a plaintiff may overcome the presumption of probable cause created by a grand jury indictment where:

> 1) A law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence;
>
> 2) The false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff, and
>
> 3) The false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*King*, 852 F.3d at 587-88. Magistrate Judge King goes on to state, and this Court agrees, that Plaintiff does not show any instances where the Defendant provided knowingly or recklessly made false statements or falsified or fabricated evidence, and therefore the presumption remains conclusive and not rebuttable. Instead of showing fabrication or falsehood, Plaintiff argues that because the evidence and testimony on which Detective Roberts relied to secure an indictment are so allegedly riddled with inconsistencies, he was reckless in relying on them to suggest Plaintiff's indictment. In particular, Plaintiff claims Detective Roberts placed undue reliance on the testimony of Jasmine Williams who testified that she saw the Plaintiff fleeing the murder scene. Plaintiff alleges that the following known yet undisclosed inconsistencies should have alerted Detective Roberts to the fact that he was relying on false testimony:

- Williams stated that marijuana and money fell out of the suspects pockets, however neither weed nor money was recovered outside the apartment complex. [R. 22 at p. 14]
- Williams stated that both suspects were wearing hats, allegedly therefore indicating that the hat found at the apartment complex could not belong to Plaintiff. *Id*. at 15.
- Williams stated that it was getting dark out while Plaintiff alleges that it was light out until roughly an hour and twenty minutes past the murder that day. *Id*.

- Williams could not definitively say where the apartment was located, the make of the getaway vehicle, or who was driving the car. *Id*.
- Williams interview with Detective Roberts contained several discrepancies with what she had told another witness, Nikkia Sullivan. *Id*. at 16.
- Detective Roberts allegedly failed to confirm any aspect of Williams' testimony. *Id*. at 17.
- Williams mispronounced Plaintiff's name in her interview and described his skin tone as darker than it is. *Id*.
- Detective Roberts did not look into Williams criminal history. *Id*. at 17-18.
- Two witnesses identified another individual, William Charter, as the second individual fleeing the murder scene while Williams stated it was the Plaintiff. [*Id*. at 18; R. 35 at p. 8].
- Detective Roberts did not disclose discussions of charging Jasmine Williams with complicity. [R. 35 at p. 9]
- Detective Roberts failed to disclose that the Commonwealth Attorney decided not to indict Gary Baker for tampering with physical evidence, despite Williams' testimony that he disposed of Eugene Baker's clothes and gun. *Id*.

The most glaring discrepancy Plaintiff cites regards the hat that arguably contained Plaintiff Lester's DNA and was found next to the victim's body. Because witness Jasmine Williams stated that Plaintiff Lester was wearing a hat when she saw him leaving the victim's apartment, the hat found at the scene could not have been the one left by the Plaintiff. Thus the argument goes, the existence of this "Schrödinger's Hat" (both on and not on the Plaintiff's head) therefore should have convincingly shown that the witness' testimony was false. While this inconsistency perhaps should have led Detective Roberts to be more skeptical of Jasmine Williams' testimony, a questionable element in part of a witness' testimony does not amount to the type of fabrications outlined in *King* particularly when there is no evidence that Detective Roberts actively concealed this fact.

The issue of concealing fact is particularly germane here, as the Court questions the extent to which the record even shows that Detective Roberts hid or omitted any crucial pieces of evidence. In his investigatory letter to the prosecutor following his interview with Jasmine

Williams, Detective Roberts explicitly states that the entire taped interviewed is included for review. [R. 35-3 at p. 2] The Plaintiff wishes the internal inconsistencies with Jasmine Williams' testimony to be definitive proof of her statement's unreliability. Importantly, however, even if these inconsistencies should have led Detective Roberts to further scrutinize Jasmine Williams' statement, her entire statement was given over to the prosecution. The Court does not find willful fabrication where the Defendant provided the entire statement on which he relied. Even considering the grand jury testimony of Detective Roberts it provides no more evidence of fabrication or falsification, as he simply states that the Plaintiff was developed as a suspect during the course of the investigation. [R. 22-23]

While the Plaintiff has certainly shown some reasons that Detective Roberts might have questioned the witness' reliability, he has not shown any statements that Detective Roberts relied on despite knowing that they were false. *Sanders v. Jones*, 728 F. App'x 563, 566 (6th Cir. 2018) (where Defendant acknowledged that on closer inspection of the surveillance footage the Plaintiff was not the one who had participated in the charged drug deal). Further, none of the discrepancies are so egregious as to undoubtedly call the factual basis for the witness' testimony into question for any reasonable police officer. *Jones v. Clark County, KY*, 690 F. App'x 334, 336 (6th Cir. 2017) (where the Defendant officer misled the prosecutor in a child pornography case "through his deficient and reckless investigation and the critical omission of material evidence, namely that Jones's electronic devices contained no pornography."). Finally, it is unclear whether relying on an arguably false witness statement would even rise to the level of making a false statement for the purpose of the presumption created by *King*. *See DiPasquale v. Hawkins*, 748 F. App'x 688, 694 (6th Cir. 2018) (questioning but not deciding whether "knowingly or recklessly relying on false statements is sufficiently akin to 'knowingly or

recklessly mak[ing] false statements' to overcome the probable-cause presumption"). While Detective Robert's investigation was not the perfect model of police work, the evidence presented cannot allow the Court to conclude it was legally reckless. The Plaintiff fails to show any false statements or fabricated evidence and therefore cannot rebut the presumption of probable cause created by the grand jury indictment. *Barnes*, 449 F.3d at 715-16.

Finally, in part for the foregoing reasons, the Court finds that Plaintiff's state law claims for malicious prosecution must also be dismissed. As noted by Magistrate Judge King, a claim for malicious prosecution under Kentucky law has the added element of a showing of malice. *Carter v. Newby*, No. 5:17-CV-130-TBR, 218 WL 3432126, at *3 (W.D.Ky. July 16, 2018). While malice may be inferred from a lack of probable cause, the plaintiff has the burden of "making a clear showing that no probable cause for the prosecution existed." *Massey v. McKinley*, 690 S.W.2d 131, 133 (Ky. Ct. App. 1985) (internal citations omitted). Additionally, a grand jury indictment creates a rebuttable presumption of probable cause. *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 607 (Ky. Ct. App. 2006).

While Plaintiff refers to his argument for a lack of probable cause for his federal law claims to show that there was no probable cause for the purpose of his state law claims, he does not cite to any Kentucky authority that would indicate that his evidence would either satisfy the "clear showing" required by Kentucky law or rebut the probable cause presumption as understood by Kentucky courts. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (the parties have "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider") (internal citations omitted). However, even considering Plaintiff's argument the Court agrees with Magistrate Judge Lindsay that Plaintiff has failed to make a clear showing necessary to rebut the presumption of probable cause where he can show only a negligent

investigation and not a reckless one. *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) ("negligence or perhaps a lack of attention to detail … does not amount to malicious prosecution.").

### III. Requests for Discovery

In his objection Plaintiff also requests further discovery on the issue of absolute immunity. Because the Court agrees with Magistrate Judge King's Report and Recommendation to the extent that Plaintiff's claims must be dismissed, there is obviously no need for further discovery and these objections are therefore overruled.

Having reviewed the Report and Recommendation, and the Objections, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Report and Recommendation [**R. 32**] is **ADOPTED IN PART** and is entered as the findings and conclusions of the Court.

2. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [**R. 35**] are **OVERRULED**.

3. A separate judgment shall issue consistent with this Order

March 29, 2019

*Claria Horn Boom*

Claria Boom, District Judge
United States District Court

cc: Counsel of record